UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DREW GLASS, | ) | |
| | ) | CIVIL COMPLAINT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-cv-914 |
| | ) | |
| CITY OF FOREST PARK, | ) | |
| | ) | |
| Defendant. | ) | **JURY DEMAND** |
| | ) | |
| | ) | |

# COMPLAINT

Now comes DREW GLASS ("Plaintiff"), complaining as to CITY OF FOREST PARK, ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for discrimination on the basis of sex pursuant to R.C. Chapter 4112.

### JURISDICTION AND VENUE

2. This Court has diversity jurisdiction over the Complaint pursuant to 28 U.S.C. 1332.

3. Plaintiff is, at the time of the filing of this Complaint, domiciled in the State of Florida.

4. Defendant is domiciled in the State of Ohio.

5. The sum in controversy exceeds $75,000.

[ 1 ]

6.       Venue is proper pursuant to 28 U.S.C. 1391(b)(1) as Defendant resides in this District.

7.       Venue is further proper pursuant to 28 U.S.C. 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

**PARTIES**

4.       Plaintiff is a natural person residing the State of Florida.

5.       Defendant is a municipality in Ohio.

6.       Defendant is vicariously liable for the actions taken by its police department and police officers pursuant to R.C. 4112.01(A)(2) and 4112.02(A). See *Hauser v. City of Dayton Police Dep't*, 17 N.E.3d 554, 555 (Ohio 2014) (these Chapters "impose vicarious liability on the political-subdivision itself").

**BACKGROUND**

7.       Plaintiff was first employed by Defendant beginning February 14, 2014.

8.       At that time, Plaintiff identified as a female, used female pronouns, and was known by a traditionally female first name.

9.       In 2016, Plaintiff explained to his supervisor, Sergeant Desalvo, that Plaintiff intended to medically transition to male.

10.     Plaintiff requested that he be called by the name "Drew" and that his coworkers use male pronouns to identify him.

11.     Plaintiff's coworkers were openly hostile to him when they learned of Plaintiff's transition.

[ 2 ]

12. One coworker, Lieutenant Pape, repeatedly and intentionally used female pronouns to refer to Plaintiff.

13. When Plaintiff confronted Lieutenant Pape, the latter responded: "I'll respect your pronouns when you legally change them."

14. The City of Forest Park Police Department (the "Department") developed a plan to shift Plaintiff from the female locker room to the male locker room.

15. According to this plan, Plaintiff would use the female locker room until he completed chest reconstruction surgery in late 2017; then, he would transition to the male locker room.

16. Sergeant (then Detective) Jackie Dreyer complained to the chief about Plaintiff's use of the women's locker room and demanded that Plaintiff be moved to the male locker room.

17. Sergeant Dreyer had no cause to complain other than to harass Plaintiff, given that she did not ever use the women's locker room at the same time as Plaintiff.

18. The Department required Plaintiff to use the male locker room for seven shifts prior to his scheduled chest reconstruction surgery.

19. When Plaintiff's male coworkers saw him in the men's locker room, they used explicit language, including the f-word, to shame and humiliate him.

20. Plaintiff informed numerous individuals in the Department with the power to take action of the discrimination he faced, including Chief Cannon, Lieutenant Pape, Captain Jones, Chief Arns, Sergeant Nared, and Human Resource Manager Andy Levandsky.

21. These individuals were aware of Plaintiff's humiliation at the hands of his coworkers, yet they failed to investigate the situation; discipline the responsible individuals; or intervene to stop the ongoing discrimination towards Plaintiff.

22. The humiliation rose to the level that Plaintiff had to dress for his shifts at home, and in essence, he had no ability to use either the male or female locker room.

23. While Plaintiff identified as a female, he received excellent performance reviews.

24. As soon as Plaintiff transitioned, however, his supervisors—in particular Sergeant Jackie Dreyer—began to give him inferior performance reviews.

25. On or about August 4, 2018, Sergeant Dreyer fabricated a story that Plaintiff had failed to make an important phone call to her during an incident involving a deceased infant.

26. Sergeant Dryer, when confronted with the call recording during a later investigation, admitted that the story was untrue.

27. Because of Sergeant Dryer's disciplinary action against Plaintiff, Plaintiff was barred from training and advancement opportunities.

28. Further, as a result of Sergeant Dryer's disciplinary action against Plaintiff, Plaintiff was placed on probation, denied the opportunity to freely drive a police car, and assigned to an undesirable beat.

29. The Department, in disciplining Plaintiff without first conducting a reasonable investigation into the facts, violated the Department's policies and violated the Department's contract with the Fraternal Order of Police.

30. On information and belief, Sergeant Dryer's actions, which the Department unjustly permitted, were based on Sergeant Dryer's hostility toward Plaintiff's gender identity.

31. The Department continued to unjustly punish Plaintiff until February 2019, when Chief Arns revoked the punishment.

32. The eight months that Plaintiff unjustly spent on probation irreparably damaged Plaintiff's reputation and career.

33. Further, the Department issued a written warning to Plaintiff regarding "officer safety" for alleged policy infractions in January 2018, February 2018, and September 2018.

34. The Department discriminated against Plaintiff by issuing him these warnings when his peers, who committed the same alleged infractions, did not receive warnings.

35. Further, on September 23, 2018, a group of officers eating in a training room with Plaintiff shared an image of a transgender male with his family.

36. In Plaintiff's presence, these officers openly announced that the transgender male was "disgusting."

37. Plaintiff reported this conduct to the Department, but he was advised that he did not have the "right" to be offended.

38. Further, the Department routinely denied Plaintiff training and advancement opportunities.

39. On information and belief, it did so out of prejudice and hostility toward Plaintiff's sexual identity.

40. For instance, in 2017, Plaintiff was denied the opportunity to attend a police officer's bicycle training school.

41. Plaintiff's male coworkers who had always identified as male, however, were given this opportunity, even when they did not qualify for this opportunity per the Department's policies.

42. Finally, and most crucially, Plaintiff was denied backup during potentially dangerous situations, including on January 31, 2018; September 18, 2018; and October 28, 2018.

43. On these occasions, Plaintiff would encounter a dangerous situation (such as a domestic violence incident) and request backup.

44. Plaintiff would be assigned Officer Gregory Huber to back him up.

45. Sergeant Jackie Dreyer, who had supervisory authority over Plaintiff, would then call Officer Huber away to another incident scene, leaving Plaintiff without backup.

46. On these occasions, Plaintiff would have to wait several minutes without backup, and no one from the City of Forest Park Police Department would come to his aid.

47. Instead, Plaintiff would have to rely on officers from nearby police departments, such as the Springdale Police Department, to back him up.

48. On information and belief, Officer Dreyer denied Plaintiff backup in order to force him to resign from the Department.

49. Plaintiff judged his position to be so unsafe that he switched to a less desirable shift.

50. Ultimately, Plaintiff left his job due to Defendant's discriminatory practices.

51. The damage to Plaintiff's reputation caused by the Department's actions was so great that Plaintiff could not easily find comparable employment in the Cincinnati area without rumors following him.

52. Ultimately, the best that Plaintiff could do was to take a police officer position in Florida.

53. Plaintiff now makes approximately $21 per hour, whereas he made approximately $37 per hour at the Department.

54. Plaintiff has lost income as a result of the Department's actions and continues to lose income at a rate of approximately $32,000 per year.

55. Further, Plaintiff has suffered lost income because his career has not advanced as rapidly as it would have, but for the Department's discriminatory actions.

### COUNT I — SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

56. Plaintiff realleges the paragraphs above as though fully set forth herein.

57. Plaintiff is a member of a protected class pursuant to R.C. Chapter 4112.

58. As set forth above, Defendant was Plaintiff's employer and acted through its employees.

[ 7 ]

59. Defendant knew or should have known of the harassment as set forth above.

60. Defendant failed to take remedial action despite having the ability and duty to do so.

61. Defendant's actions and inactions created a hostile work environment.

62. The effect of Defendant's discriminatory policies and practices was to unreasonably interfere with Plaintiff's work, to jeopardize Plaintiff's livelihood, and to reduce Plaintiff's opportunities for advancement and additional income.

63. As a direct, foreseeable and proximate result of Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses in earnings and job benefits.

64. Further, Plaintiff has suffered humiliation, embarrassment, mental distress, emotional distress, and loss of reputation.

65. Defendant committed the acts described herein oppressively, fraudulently, with conscious disregard for the rights of Plaintiff and with actual malice, entitling Plaintiff to an award of punitive damages.

66. The harassment was severe, pervasive, and unwelcomed by Plaintiff, and Plaintiff perceived the conduct of Defendant as offensive.

WHEREFORE, Plaintiff respectfully requests judgment as follows:

    **a.**    Awarding Plaintiff actual damages in the form of lost wages;

    **b.**    Awarding Plaintiff compensatory damages for wrongs suffered;

    **c.**    Awarding Plaintiff attorney fees to the extent permitted by law;

    **d.**    Awarding Plaintiff the costs of this action;

    **e.**    Awarding Plaintiff punitive and/or exemplary damages; and

    **f.**    Awarding any other relief as this Honorable Court deems just and appropriate.

**<u>A TRIAL BY JURY IS DEMANDED.</u>**

Dated: November 11, 2020

<u>By: s/ Jonathan Hilton</u>

Jonathan Hilton (0095742)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 427-5557
jhilton@hiltonparker.com
*Attorney for Plaintiff*

Josh Langdon Hooser (0090956)
Singler Law, LLC
8044 Montgomery Road, Suite 700
Cincinnati, Ohio 45236
Phone: (513) 486-2486
E-mail: josh@singlerlaw.net
*Attorney for Plaintiff*